# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA ex rel.   )
CHARLES HASLETT,   )
   )
           Petitioner,   )
   )
     vs.   )     10 C 1182
   )
DONALD GAETZ, Warden,   )
MENARD CORRECTIONAL CENTER,   )
   )
           Respondent.   )

## <u>MEMORANDUM OPINION</u>[1]

CHARLES P. KOCORAS, District Judge:

This case comes before the court on the petition of Charles Haslett for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated below, the petition

is denied.

## BACKGROUND[2]

On June 19, 2003, after a jury trial in the Circuit Court of Cook County,

Petitioner Charles Haslett ("Haslett") was convicted of the first degree murder of

---

[1] Haslett is currently incarcerated at Menard Correctional Center in Menard, Illinois. When he first filed his petition, Donald Gaetz was the warden of that facility. During the pendency of his petition, Dave Rednour has replaced Gaetz as warden of Menard. Accordingly, Rednour is the state officer who has custody of Haslett and is substituted for Gaetz as the respondent in this matter. *See* Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts; *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).

[2] The following facts are primarily derived from the Illinois Appellate Court's decision affirming Haslett's conviction and sentence on direct appeal. *People v. Haslett*, No. 1-04-0325 slip op. (Ill. App. Ct. Jun. 23, 2006).

Dangrell Taylor ("Taylor") and the attempted first degree murder of Cleon Thomas ("Thomas"). The court imposed a sentence of 70 years imprisonment for the first degree murder conviction and a concurrent sentence of 20 years on the attempted first degree murder charge.

On December 1, 2002, a grand jury returned an indictment against Haslett charging him with the first degree murder of Taylor and the attempted murder of Thomas. At his arraignment on February 8, 2001, the trial court informed Haslett of the charges pending against him and appointed an attorney from the Cook County Public Defender's Office to defend him at the arraignment hearing. The Court noted that an assistant Public Defender had been assigned to Haslett's case but had not been appointed because Haslett indicated that he did not want any lawyer that was appointed for him. A few weeks after the arraignment, Haslett's family retained Earl Washington ("Washington") to serve as Haslett's private attorney; Washington filed his appearance on Haslett's behalf on March 29, 2001.

The prosecution tendered a discovery request to Haslett and Washington on December 18, 2001. In the request, the State asked for written notice of any defenses that Haslett intended to assert at trial. Washington submitted his response to the discovery request in April 2002 and indicated that the only defense Haslett would rely on at trial would be the State's inability to prove his guilt beyond a reasonable doubt.

On October 3, 2002, roughly three months before Haslett's trial began, the State brought to the trial court's attention that Washington had a complaint pending against him before the Illinois Attorney Registration and Disciplinary Commission ("ARDC"). Washington expressed to the court that he had already disclosed the complaint to Haslett and that, despite any outstanding issues with the ARDC, Haslett wanted Washington to continue his representation. Haslett confirmed the veracity of Washington's statements in an oral representation at the hearing and in a signed affidavit submitted to the court. In relevant part, the document stated: "[i]t is my decision, after discussing the matter with my counsel, that I want him to continue to represent me in this case."

Haslett's murder trial began on June 16, 2003. Just before jury selection began, the trial judge noted that Haslett had an additional criminal charge for possession of alcohol in a penal institution pending before the court. The judge indicated that Haslett was represented by the Cook County Public Defender in the alcohol possession case and continued the matter until June 27.

After jury selection was completed, each side presented an opening statement. Washington argued for the defense that the State's witnesses were not credible, that Haslett had no motive to commit the crime, and that the State would ultimately be

unable to prove its case beyond a reasonable doubt. Washington made no mention of an alibi during his opening statement.

The prosecution put James Garnett ("Garnett") on the stand to serve as their first occurrence witness. Garnett testified that on November 2, 2002, he lived in the basement of an apartment building at 4042 West Potomac Avenue in Chicago, Illinois. Alberta Haslett ("Alberta"), the Petitioner's grandmother, owned the building and also lived there along with Haslett; Garnett testified that he had known Haslett for most of his life. At about 6:30 p.m. on the date in question, Garnett was on the front porch watching a number of people, including Haslett, playing dice in front of the building. During the dice game, a white automobile pulled up in front of the house and parked. Garnett testified that a few moments after the car arrived, Haslett left the dice game and went inside the house. Garnett further stated that he saw Haslett emerge from the gangway of the apartment with a rifle and that Haslett fired shots at the car. Garnett estimated he was a few feet from Haslett when the shooting occurred.

On cross-examination, Washington asked Garnett several questions about whether he had made any previous statements about the shooting. Garnett responded that he had identified Haslett as the shooter in discussions with Chicago Police officers, an Assistant State's Attorney, and in his testimony before the grand jury. Upon further cross-examination, Garnett testified that before trial, he had told Alberta and the police

that another man, Nissan Little, was the shooter. Garnett claimed that he identified

Little as the shooter only after Alberta had warned him not to say anything about the

shooting. Washington also questioned Garnett about whether he was biased against

Haslett because Haslett's brother had been involved in the murder of Garnett's nephew.

Garnett denied having such bias. When Washington persisted in this line of questioning,

the following exchange occurred:

> Mr. Washington: Isn't it true, sir, that you are testifying before this jury today in an attempt to try to get even with this defendant and his family for his brother having killed your nephew?
>
> A [Garnett]: No sir.
>
> Q: How long ago was it that this man's brother is supposed to have killed your nephew?
>
> Mr. Goutos [Prosecutor]: Objection.
>
> The Court: Sustained – Overruled. Counsel, do you know?
>
> Mr. Washington: I'm going to bias.
>
> The Court: I'm going to ask you if you know an answer to that question. We're not having when did you stop beating your wife questions here. If you know, you can ask the question, but this is not a fishing expedition.
>
> Mr. Washington: May we have a brief sidebar?
>
> The Court: No, we may not have a sidebar. Do you know, yes or no?
>
> Mr. Washington: I don't know the exact date.
>
> The Court: Well, the objection is sustained. Move along.

Washington then resumed his cross-examination of Garnett on a different topic.

After the parties completed their examination of Garnett, the trial court dismissed the jury for the day, paused in the proceedings, and addressed Washington and Haslett:

> The Court: Mr. Washington, you have tried cases in my courtroom before. I have known you for years. I'm asking you right now if you are mentally and physically up to try [a] first degree and attempted first degree murder trial? I'm asking you as an officer of this court if you know what the facts are in this case to the point where you can adequately cross-examine these witnesses? You cannot speak to an assistant, the woman sitting beside you, throughout direct examination and redirect examination and then get up. You cannot speak while the jurors are being questioned or the witnesses are being questioned. You've had difficulties with the – you have had difficulties pending, I know, with [the] Attorney Registration [and] Disciplinary Commission. Your client has signed a waiver saying that he wants you to proceed. If you have other things on your mind, this is a three-year-old murder, we're trying this, and if you're not ready, you're to step down from this case now because I am not going to have ineffective assistance of counsel thrown in my face back from the Appellate Court. As an officer of the court, I am – implore you to make your decision now if you can go on with this case. I'm asking you to confer with Mr. Haslett.
>
> Mr. Haslett, I want you to understand that you are not going to have that sword to fall on, your attorney could not adequately represent you. You have chosen him, you have chosen to go forward with him. If you do not feel he is up to it in terms of knowing the facts of this case, in terms of adequately being able to represent who the players are in this case, there's several names going to come out.
>
> If you do not know who the players are, this is going to be an injustice for Mr. Haslett, for the victim in this case, the victim's family, the witnesses that are coming in here. I am not going to have questions put forth with no good faith basis for them. You cannot do that in this court ever. Confer with your client, Mr. Haslett.
>
> Should you choose to go forward with Mr. Washington if he feels he is up to this, you do that knowing that you are not going to rely on an

ineffective assistance of counsel's [sic] claim should there be a verdict of guilty of first degree murder and attempted first degree murder.

And you cannot bring two assistants in here who are not lawyers and ask them what questions to ask throughout the next week of this trial, Mr. Washington, you can't do that. That is not practicing law. That is, you know, where do I go from here, what's my next question, that is not going to happen in this courtroom when a man is looking at the rest of his life in the penitentiary.

So you decide right now if you're up to it, if you know the facts of this case.

And Mr. Haslett, you decide if you want him to go forward with your case. If he does, we are putting it on the record.

Mr. Washington: Do you want me to answer your Honor?

The Court: I want you to talk with your client and make a decision. I don't want you to – you seem to have an answer right now for me, you know. If your answer is yes, fine. If your answer is no, fine. I just want you to make an informed decision with your client.

Mr. Washington: Well, my answer is yes, and you are correct, I do refer to my assistant, Mrs. Wheeler, who has been with me for six years, we've tried a number of murder cases in this building, and I always refer to her for her assistance because of my inability to see, but I don't ask her to give me any questions.

The Court: Counsel, I just –

Mr. Washington: An example –

The Court: – with your client, that's all. You're not going to be speaking in this courtroom with anyone while someone is being questioned.

Mr. Washington: You mean I can't confer –

The Court: No, no.

Mr. Washington: Well, the State does it all the time.

The Court: You talked through the direct examination of this witness, counsel.

Mr. Washington: I had a witness on cross, not direct.

The Court: I know, you spoke to – I'm sorry, what's your name.

Voice: Venus Wheeler.

The Court: Venus Wheeler, throughout the direct examination of this witness. How could you even have a question for cross-examination when you don't listen to the direct examination?

Mr. Washington: Well –

The Court: Talk to your client. If he wants you to represent him, if he wants to make that decision, that is his right to be represented by who he wants, but I'm telling you –

Mr. Washington: There is one point I'd like to ask your Honor since you brought this matter up. In my cross-examination, I was attempting to bring out the bias of that particular witness because this defendant's brother was convicted of having killed his nephew. You would not allow me to develop that earlier.

The Court: But you didn't know when. You didn't know if it was the brother or the nephew or when it happened. That's a fishing expedition. You went into different stories. You asked this witness about different stories there by [sic] enabling the State to bring in three prior inconsistent statements, counsel. If you were laying the groundwork for ineffective assistance of counsel, I'm stating right now it's a technical error you made. Now this jury knows that, he said it once, second in a handwritten statement, and to the Cook County Grand Jury.

Mr. Washington: Said what?

The Court: What he said today, so that is four times he said your client has shot the victim in this case. He said it on the stand under oath, he said it

to Assistant State's Attorney, he said it to detectives, and he said it to the Grand Jury. So if that is your tactical error – your tactical – your trial tactics, that's your rights, [sic] but when you start questioning different stories, you thereby open the door for prior consistent statements, which you have done.

Mr. Haslett, do you want – your attorney says he's up to it, do you want Mr. Washington to represent you.

The Defendant: Yes, ma'am.

The Court: And that is your right.

The State resumed presenting its case the following day and called a number of eyewitnesses to the stand. One such witness was Cleon Thomas, the victim who survived the attack and identified Haslett as the shooter. Nissan Little ("Little") also testified for the State. At trial, Little testified that he did not know Haslett or Alberta. He also stated that he could not remember if he was at 4042 West Potomac on November 2, 2000. The State showed Little a note which read that "I, Nissan Little, did not see Charles Haslett commit any crime. No one forced me to write this letter, and all the officers made me say it, and they hit me until I said it was Charles Haslett[.]" Little testified that he did not remember writing this statement. The State impeached Little by introducing his grand jury testimony where he admitted that he knew the defendant. Little's testimony before the grand jury contained specific and detailed information about the shooting. According to Little's grand jury testimony, Haslett left the dice game shortly after Thomas and Taylor arrived. Little followed Haslett inside the

apartment and saw Haslett retrieve a gun from a closet in one of the bedrooms. Little noted that a few minutes later, Haslett went to the front of the house and shot at the men in the white car.

Marty Williams ("Williams") also testified for the prosecution. Williams stated that he knew Haslett but that he did not count him among his personal friends. On the night of the shooting, Williams was playing dice with Haslett and a few other people in front of the apartment building at 4042 West Potomac. Williams testified that he did not see Haslett go inside the house and that he also did not see him shoot at the car. Williams did, however, testify that when the gunman shot at the car, he heard the driver of the car yell "Newey, it's us, it's us." Williams identified "Newey" as one of Haslett's nicknames. When Williams denied giving a statement about the shooting to the police or to an Assistant State's Attorney, the State impeached him with a written summary of a statement he made to the police and to Assistant State's Attorney Cathy Hufford. In the statement, Williams gave a detailed description of the shooting and identified Haslett as the shooter.

Laron Betts ("Betts") was the last occurrence witness put forth by the State. Betts testified at trial that he was at 4042 West Potomac on November 2, 2000. Betts further testified that he saw a white car pull up and heard the driver say something to the men playing dice. Betts then witnessed Haslett go inside the house. Betts stated that he saw

an unknown individual run along the side of the house a few minutes later. The individual was wearing a black hooded sweatshirt and carrying a gun. At this point, Betts took off running but, as he ran, he looked back and saw the man wearing the black hooded sweatshirt fire the gun at the men in the white car. Betts stated that he did not see the shooter's face. The State impeached Betts with his statement to the grand jury in which he identified Haslett as the shooter. Betts also testified to the grand jury that he made a prior statement to an Assistant State's Attorney in which he identified Haslett as the shooter.

The prosecution put on a number of other witnesses in addition to the five eyewitnesses identified above. Two Assistant State's Attorneys testified regarding the circumstances under which a number of the State's eyewitnesses were interviewed and as to the nature of the eyewitnesses' testimony before the grand jury. A Chicago Police Detective testified that he had interviewed Betts and Garnett and that both men had identified Little as the shooter in their statements to them. Additionally, a forensic scientist testified that shell casings recovered from the scene had been fired from a rifle recovered by police from under a mattress at 4042 West Potomac.

For the defense, Washington first called Alberta Haslett. Alberta denied having threatened, coerced, or sent anyone to threaten any of the occurrence witnesses. Alberta testified that she did not see the shooting but heard gunshots while talking on the phone

in her kitchen at 4042 West Potomac. Alberta testified that her grandson was in the kitchen with her when the shooting occurred and that she went downstairs after she heard the gunshots.

After Washington completed his direct examination of Alberta, the State objected to her testimony outside the presence of the jury. The State objected because Alberta's testimony provided Haslett with an alibi even though the defense had not listed an alibi in its April 2002 discovery answer or in any subsequent document submitted to the court. Washington argued that Alberta's testimony should be admitted because the State suffered no surprise from the admission of the testimony – Alberta had made a statement to an Assistant State's Attorney prior to trial that included the substance of her alibi testimony. Washington also argued that the entirety of Alberta's testimony should not be stricken because not all of it pertained to the alibi defense. The court rejected Washington's arguments and struck the entirety of Alberta's testimony, instructing the jury to ignore all of her statements made from the witness stand. The judge stated that it did not tolerate discovery violations and noted that Washington had years to prepare for this case.

The defense then called Asasca Fisher ("Fisher"), who was under the legal guardianship of Alberta. Fisher testified that she knew both Haslett and Little. She also stated that on November 2, 2000, at around 7:00 p.m., she was at the window of her

bedroom at the apartment on 4042 West Potomac. As she looked out of the window from the apartment building, she saw Little run out of the gangway. Fisher testified that he had a gun and was shooting as he ran. Fisher testified that she went into the kitchen and talked to Alberta after witnessing the events she described.

Haslett also took the stand on his own behalf and denied shooting the men in the car. Haslett testified that he followed Little into the apartment building at 4042 West Potomac after the white car pulled up in front. Haslett testified that he stayed in the kitchen to talk to his grandmother while Little went into a bedroom elsewhere in the building. Haslett testified that he saw Little walk out of the house carrying a rifle a few minutes later and remained in the kitchen with his grandmother when he heard gunshots coming from outside. On cross-examination, Haslett testified that the rifle belonged to his brother and to Little and denied placing the rifle in the basement.

The State called Tyrice Harkins ("Harkins") to testify in rebuttal. Harkins testified that he was the boyfriend of Farrah Fisher who lived at 4042 West Potomac. Harkins acknowledged visiting the building around the time of the shooting but denied seeing Haslett during that visit. The State impeached Harkins with a statement he made to the police and to an Assistant State's Attorney. In the statement, Harkins stated that he saw Haslett hide a rifle in the ceiling of the basement at 4042 West Potomac. Harkins testified at trial that he made this statement only after the police had threatened to

charge Harkins himself with possession of the rifle. Chicago Police Detective Anthony Wojick also testified in rebuttal that Harkins gave the statement at issue in his presence. Wojick denied that he or any other person threatened to charge Harkins with a crime if he did not cooperate.

The jury deliberated for an hour before finding Haslett guilty of first degree murder and attempted first degree murder. On July 21, 2003, the judge sentenced Haslett to 70 years' imprisonment for the first degree murder charge and a concurrent term of 20 years' imprisonment for the attempted first degree murder conviction.

Haslett appealed his conviction to the Illinois Appellate Court on November 30, 2004. In his appellate brief, Haslett asserted the following claims:

(a) Haslett did not knowingly waive his right to be represented by effective counsel;

(b) Trial court erred in striking Alberta Haslett's testimony;

(c) Trial court denied Haslett his rights under the Confrontation Clause of the Sixth Amendment by precluding defense counsel from asking questions as to possible bias;

(d) Washington provided constitutionally ineffective assistance of counsel for failing to: (I) disclose Haslett's alibi defense in discovery; (ii) object to admission of Garnett's prior consistent statements; and (iii) investigate circumstances of Garnett's nephew's murder;

(e) trial court erroneously enhanced Haslett's sentence; and

(f) the statute pursuant to which Haslett's sentence was enhanced was unconstitutional.

The Illinois Appellate Court affirmed Haslett's conviction on June 23, 2006. *People v. Haslett*, No. 1-04-0325, slip op. at 36 (Ill. App. Ct. Jun. 23, 2006). The court declined to reach the merits of Haslett's ineffective assistance of counsel claim. Instead, the court dedicated a substantial portion of its analysis to examining whether he had "knowing[ly], voluntar[il]y, and intelligent[ly]" waived the claim by repeatedly requesting that Washington continue his representation "even after the trial court took pains to warn [D]efendant of counsel's poor performance." *Id.* at 21. The appellate court noted "that a defendant may waive his constitutional right to effective assistance of counsel." *Id.* The court also recognized that a "tension sometimes arises between a defendant's right to effective assistance of counsel and his right to have counsel of his choice" but observed that a defendant may knowingly voluntarily, and intelligently waive the former right in exercising the latter. *Id.* The court also cited *Brady v. United States*, 397 U.S. 742, 748 (1970), for the proposition that "a defendant's waiver of effective assistance of counsel is valid only if defendant was sufficiently aware of the relevant circumstances and likely consequences of the waiver and if the defendant was able to make a rational choice from among the alternatives available to him . . . based on the totality of the facts in the record." *People v. Haslett*, No. 1-04-0325, slip op. at 23.

After describing the applicable standards for waiver of effective assistance of counsel, the appellate court rejected Haslett's argument that his waiver was invalid because the trial court did not remind him of his right to appointed counsel. The court noted that a trial court need not make a specific set of admonitions before accepting a defendant's waiver. *Id*. at 24. The court also concluded that Haslett knew of his right to appointed counsel based on the totality of facts in the record. *Id*. at 24-25. Specifically, the court found it "simply unbelievable that [D]efendant, who had been advised of his right to counsel, who actually received representation from an appointed counsel at an earlier stage in the proceedings, and who was admonished by the trial court as was done here, could have been unaware of his right to appointed counsel." *Id*. at 25. The court also found that Haslett appreciated the risks he faced if he continued with Washington as his attorney. *Id*. The court cited the following facts in support of its finding: (1) Haslett executed a signed waiver that explicitly stated his desire for Washington to continue to be his attorney even after the ARDC complaint against him was disclosed; (2) the trial court informed Haslett of his right to effective assistance during the waiver colloquy; (3) the trial court cited specific examples of Washington's mistakes during the waiver discussion; and (4) the trial court expressed her doubts about Washington's ability to try the case in Haslett's presence. *Id*. at 25.

After considering Haslett's ineffective assistance arguments, the Illinois Appellate Court proceeded to reject Haslett's contention that the trial court erred in striking Alberta's testimony. The appellate court noted that Haslett admitted that his defense counsel failed to comply with the alibi disclosure rule found in Illinois Supreme Court Rule 413(d)(iv). *Id*. at 32. The court also observed that Washington never mentioned petitioner's alibi in his opening statement but first elicited it in Alberta's direct examination with a prepared question. *Id*. Based on these facts, the appellate court found that the evidence indicated that Washington intentionally tried "to gain an unfair advantage" by springing the alibi defense at the eleventh hour and that the trial court appropriately struck her testimony. *Id*. at 33. The appellate court rejected the remainder of Haslett's challenges to his conviction.

Haslett filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court and abandoned all of his claims with two exceptions. Haslett asserted that: (1) the trial court's admonitions to Haslett regarding the consequences of his waiver of effective assistance were insufficient; and (2) the trial court erred in striking the entirety of Alberta's testimony without making an explicit finding that Washington had acted in bad faith. The Illinois Supreme Court denied petitioner's PLA on November 29, 2006.

On June 19, 2007, Haslett filed a pro se petition for postconviction relief in the Circuit Court of Cook County. Haslett asserted the following claims in his pro se postconviction submission:

(a) Washington ineffective for failing to investigate sources of evidence or locate crucial witnesses that would have allowed him to impeach State's witnesses;

(b) Washington ineffective for failing to conduct adequate investigation into Garnett;

(c) trial court erred by disparaging Washington before the jury;

(d) Haslett's right to counsel violated because he was unknowingly represented by Washington's lay assistant;

(e) direct appellate counsel ineffective for failing to raise various issues on direct appeal;

(f) petitioner's rights to due process and equal protection were violated by cumulative trial court errors and ineffective assistance.

*People v. Haslett*, No. 1-07-2696 slip op. at 7-8 (Ill. App. Ct. Jun. 19, 2009). The trial court summarily dismissed the petition on August 20, 2007, finding it frivolous, patently without merit, and barred under res judicata.

Petitioner appealed the trial court's denial of his pro se petition and argued that: (1) he was actually innocent; and (2) Washington was ineffective for failing to investigate and interview particular witnesses. *Id*. at 1, 16. The appellate court relied on Illinois procedural law in concluding that Haslett procedurally defaulted his actual-innocence claim because he raised it for the first time on postconviction appeal. The

court also held that Haslett's ineffective assistance claim was barred by the doctrine of res judicata. Haslett filed a petition for leave to appeal the postconviction appellate court's decision to the Illinois Supreme Court that raised the actual innocence and ineffective assistance claims. The Illinois Supreme Court denied Haslett's PLA on November 25, 2009.

On February 22, 2010, Haslett filed a petition for a writ of habeas corpus. Haslett asserts a number of challenges to his conviction and sentences, including:

(a) Trial court erred in concluding that petitioner knowingly and intelligently waived his right to competent counsel;

(b) Trial court violated Haslett's Sixth Amendment Right under the Compulsory Process Clause by striking testimony of Alberta Haslett based on lack of alibi notice;

(c) Trial court denied Haslett his right under Confrontation Clause of Sixth Amendment in refusing to permit cross-examination of Garnett regarding potential bias;

(d) Haslett's due process rights were violated when he was convicted based on insufficient evidence to find him guilty beyond a reasonable doubt;

(e) Washington provided ineffective assistance of counsel by: (I) failing to conduct adequate pre-trial investigation into prosecution's leading witness; (ii) failing to investigate a government-relocated witness that would have connected an alternative suspect to the crime; (ii) questioning a state witness in a manner that allowed admittance of prior consistent statements before the jury; (iv) failing to conduct an investigation into a witness whose testimony would have directly contradicted state witness; (v) failing to conduct adequate investigation of witness who would have provided exculpatory evidence and testimony; (vi) failing to disclose petitioner's alibi defense during discovery.

Haslett has no remaining opportunities for the Illinois courts to review the claims contained in the instant petition as Illinois law only permits the filing of one postconviction petition absent leave of court. *See* 725 ILCS § 5/122-1(f).

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") permits a prisoner in state custody to petition a federal district court for a writ of habeas corpus on the ground that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). AEDPA further dictates that a prisoner in state custody cannot be granted habeas relief "unless the state court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Schaff v. Snyder*, 190 F.3d 513, 521 (7th Cir. 1999) (quoting 28 U.S.C. §§ 2254(d)(1), (2)). For a state court decision to be "contrary to" clearly established federal law, it must be "substantially different" from relevant Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). This situation arises if the state court either applies a rule that contradicts the governing law as set forth by the Supreme Court or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and still arrives at a different result. *Id.* at 405-06. A state court decision

involves an "unreasonable application" of clearly established Supreme Court law when it uses the correct legal rule but applies it in an objectively unreasonable manner. *Id*. at 409-10. An objectively unreasonable decision is one that lies "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002). "Finally, factual determinations of a state court are presumed to be correct and hence not 'unreasonable' unless a petitioner can show otherwise by clear and convincing evidence." *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004).

Under 28 U.S.C. § 2254(b), a state habeas petitioner must exhaust his remedies in the state courts before he can pursue federal habeas review of his claims. In order to fulfill his exhaustion obligations, a petitioner must fairly present his federal claims to the state courts for "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). The one complete round of review may occur "either on direct appeal of his conviction or in post-conviction proceedings." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). A petitioner who fails to maintain a claim throughout one complete round of review has procedurally defaulted that claim and foreclosed federal habeas review of the issue. *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010).

# DISCUSSION

Rednour contends that all but three of Haslett's claims are procedurally defaulted. With respect to Haslett's non-defaulted challenges, Rednour argues that: (I) the Illinois Appellate Court's finding that Haslett knowingly waived his right to effective assistance of counsel was reasonable; and (ii) the Illinois Appellate Court's holding that the trial court properly struck Alberta's testimony was consistent with Federal law.

## I.  Confrontation Clause and Due Process Claims - (c), (d)

Rednour argues that Haslett procedurally defaulted his Confrontation Clause and Due Process claims by failing to raise them through one complete round of state court review. Haslett never raised the insufficiency of evidence challenge at any stage of either the direct or collateral review of his conviction. Accordingly, he has procedurally defaulted this claim. *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). Additionally, Haslett did not present his Confrontation Clause claim in direct review PLA and failed to assert the challenge at any point during his postconviction proceedings. Because Haslett neglected to present his Confrontation Clause claim for one complete round of state court review, we find he has procedurally defaulted this challenge as well.[3] *See Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). A court may

---

[3] Rednour maintains that Haslett has procedurally defaulted his ineffective assistance of counsel claim because the postconviction appellate court concluded it was barred from considering the challenge under the doctrine of res judicata. As a general matter, a habeas

(continued...)

excuse procedural default if a petitioner shows cause for that default and resulting prejudice or his actual innocence. *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). Haslett has not attempted to show cause and prejudice for his default or his actual innocence and thus provides us with no justification to review his defaulted claims. *Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008). Claims (c) and (d) are denied.

## II.    Waiver of Sixth Amendment Right to Effective Assistance Claim - (a)

Haslett contends that the Illinois Appellate Court unreasonably found that he knowingly waived his right to effective assistance of counsel.[4] Waiver is the "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). A defendant may waive his right to effective assistance of counsel but only if the waiver is done knowingly and voluntarily. *Godinez*

---

[3](...continued)
petitioner's claim will be considered procedurally defaulted when a state court decides a federal issue on the basis of a state procedural rule that is independent of the federal question and adequate to support the judgment. *See Stewart v. Smith*, 536 U.S. 856, 859-61 (2002). This principle does not apply in this instance, however, because "res judicata is not a bar to consideration of claims in a federal habeas action." *Moore v. Bryant*, 295 F.3d 771, 776 n.1 (7th Cir. 2002). We decline to deny the claim on that basis. We discuss the application of the procedural default to one specific aspect of Haslett's ineffective assistance claim separately below.

[4] Haslett occasionally refers to alleged errors on the part of the trial court in support of his petition for habeas relief. "The relevant decision for purposes of our assessment is the decision of the last state court to rule on the merits of the petitioner's claim." *Simpson v. Battaglia*, 458 F.3d 585, 592 (7th Cir. 2006). The Illinois Appellate Court was the last court to examine the merits of Haslett's contentions and we limit our analysis to the appellate court's factual findings and reasoning.

*v. Moran*, 509 U.S. 389, 401 (1993).[5] A waiver may be considered knowing when made "with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The question of whether a defendant waived his right knowingly is a factual determination. *Gomez v. Ahitow*, 29 F.3d 1128, 1134 (7th Cir. 1994). Under 28 U.S.C. § 2554(d)(2), a federal habeas court may not disturb a state-court decision unless the court predicated its ruling on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." When reviewing the factual determinations made by a state court of review based on the trial record, "a determination of a factual issue made by a State court shall be presumed to be correct" unless the presumption is rebutted "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Ben-Yisrayl v. Buss*, 540 F.3d 542, 546 (7th Cir. 2008). Under this demanding standard, we may only grant habeas relief "if,

---

[5] Neither side disputes that the Constitution allows a defendant to waive effective, i.e. competent, assistance of counsel in order to proceed with the attorney of his choosing. Therefore, the consideration of this constitutional question is not absolutely necessary to resolve Haslett's petition and we decline to address it at this time. *See Ashwander v. TVA*, 297 U.S. 288, 347 (1936). We only note that relevant Supreme Court cases contain language in support of both the permissibility and impermissibility of such a waiver. *Compare Faretta v. California*, 422 U.S. 806, 834 (1975) ("[i]t is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage") *with Wheat v. United States*, 486 U.S. 153, 158 (1988) ("while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers").

after reviewing the evidence, we are left with a definite and firm conviction that a mistake has been committed." *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009).

We find that the Illinois Appellate Court reasonably determined that Haslett knowingly waived his right to effective assistance of counsel. The trial record demonstrates that Haslett appreciated the circumstances surrounding his decision as well as its consequences. The trial judge made abundantly clear that if Haslett assented to Washington continuing his representation then he assumed the risk that Washington would provide ineffective assistance and he would be prevented from raising an ineffective assistance claim on appeal. The trial court notified Haslett that Washington had a pending complaint before the ARDC and Haslett decided to continue with Washington as his attorney in spite of those proceedings. At trial, the trial judge questioned Washington's overall preparedness and ability in Haslett's presence. Specifically, the judge challenged Washington's knowledge of the underlying facts, his mental and physical ability to try the case, his ability to effectively subject witnesses to cross-examination, and his dependence on a lay assistant to formulate questions. The trial judge also made clear to Haslett that he would not be able to assert an ineffective assistance claim if he exercised his right to have Washington as his attorney. Given the trial court's extended description of its concerns regarding Washington's representation and its repeated warnings about the appellate implications of proceeding with the

attorney of his choice, the Illinois Appellate Court reasonably found that Haslett knew of the consequences of continuing with Washington as his lawyer.

Haslett maintains that he did not knowingly waive his right to effective assistance because the trial court did not notify him about his right to appointed counsel. Haslett misunderstands the nature of the inquiry; "[t]he right question . . . is not whether the judge told the defendant everything . . [t]he question is whether the defendant knew enough to make the choice an informed one – a rational reconciliation of risks and gains that are on the main understood." *United States v. Roth*, 860 F.2d 1382, 1387 (7th Cir. 1988). Though the trial judge did not explicitly mention the right to appointed counsel during the waiver colloquy, we think the appellate court reasonably concluded that Haslett was aware of this right. The trial court appointed a public defender to represent Haslett at his arraignment and he expressed his desire to forego appointed counsel in favor of a privately retained lawyer. Additionally, in the midst of litigating the murder and attempted murder charges, Haslett was represented by the Cook County Public Defender's Office in an alcohol possession in a penal institution case. In light of this record evidence, the appellate court reasonably found that Haslett was aware of his right to appointed counsel at the time of waiver.

Haslett also argues that affidavits from himself and his mother describing his lack of awareness regarding the consequences and circumstances of his waiver are sufficient

to rebut the factual findings of the appellate court. These affidavits are dated May 2007 and were not before the state appellate court on direct appeal before it issued its decision on June 23, 2006. *See People v. Haslett*, No. 1-04-0325 slip op. (Ill. App. Ct. Jun. 23, 2006). The reasonableness of a state court's findings are "assessed in light of the record the court had before it." *Sutherland v. Gaetz*, 581 F.3d 614, 617 (7th Cir. 2009). The affidavits were not presented to the court charged with deciding Haslett's appeal and, therefore, we decline to disturb the court's findings based on the assertions made by the affiants.

The Illinois Appellate Court reasonably found that Haslett knowingly waived his right to effective assistance of counsel. Accordingly, claim (a) is denied.

## III.    Ineffective Assistance Claim - (e)

Rednour argues that Haslett cannot obtain habeas relief for ineffective assistance of counsel because he waived his right to assert such a claim on appeal. Having knowingly waived his right to effective assistance of counsel in favor of proceeding with the counsel of his choice, Haslett cannot assert an ineffective assistance claim to challenge his conviction on habeas. *See Gomez v. Ahitow*, 29 F.3d 1128, 1135-36 (7th Cir. 1994). Haslett contends that his ineffective assistance challenges fall outside the scope of the waiver he made at trial. The majority of Haslett's claim targets Washington's insufficient pre-trial preparation and his deficient cross-examination of

Garnett. The trial judge explicitly asked Haslett whether he intended to proceed with Washington as his lawyer despite the judge's concerns regarding Washington's preparedness and his inadequate cross-examination of the State's first eyewitness. In responding in the affirmative, Haslett knowingly waived ineffective assistance claims arising out of Washington's pre-trial preparation and cross-examination of Garnett. Consequently, he is precluded from asserting those challenges in his habeas petition.

Though Haslett's ineffective assistance challenge regarding Washington's failure to disclose his alibi defense arguably falls outside the scope of his waiver, we are nevertheless procedurally precluded from considering that particular challenge because Haslett did not raise it through one complete round of review. Haslett asserted the ineffective assistance for failure to disclose the alibi defense on his appellate brief and set out the operative facts regarding Washington's failure to disclose the defense in his petition for leave to appeal to the Illinois Supreme Court. However, Haslett's PLA presented the operative facts in the legal context of a challenge to the trial court's ruling striking Alberta's testimony and did not present the relevant legal principles for ineffective assistance. Because Haslett did not put forth the controlling legal principles for ineffective assistance in his PLA, we find that the issue was not fairly presented to the Illinois Supreme Court. *Pole v. Randolph*, 570 F.3d 922, 936 (7th Cir. 2009). Therefore, we find that Haslett has procedurally defaulted the claim. *Smith v. McKee*,

598 F.3d 374, 382 (7th Cir. 2010). Haslett provided no grounds for the court to excuse his procedural default in that he made no attempt to demonstrate cause or prejudice for his procedural defaults nor demonstrate his actual innocence. *See Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). We therefore decline to address his remaining ineffective assistance claim at this time.

We find that Haslett has either waived or procedurally defaulted his ineffective assistance claims and therefore deny claim (e).

## IV.    Compulsory Process Clause Claim - (b)

Finally, Rednour argues we should deny Haslett's remaining habeas claim because the state appellate court's holding that the trial court properly struck Alberta's testimony was neither contrary to, nor based on an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). A decision is only "contrary to" federal law if it incorrectly states governing Supreme Court precedent or, "having identified the correct rule of law, decide[s] a case differently than a materially factually indistinguishable Supreme Court case." *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004). A state court's application of Supreme Court precedent is unreasonable only if its reasoning falls "well outside the boundaries of permissible differences of opinion." *Woods v. McBride*, 430 F.3d 813, 816-17 (7th Cir. 2005).

We find that the Illinois Appellate Court's holding that the trial court properly struck Alberta's testimony for failure to abide by discovery rules to be consistent with federal law. The Sixth Amendment guarantees a criminal defendant "the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987). These rights are not absolute, however; courts may exclude a witness' testimony for violation of discovery rules if the violation was "willful and motivated by a desire to obtain a tactical advantage" and the exclusion will not violate the Sixth Amendment. *Taylor v. Illinois*, 484 U.S. 400, 415 (1988). In upholding the exclusion of testimony by a witness whom the defendant failed to disclose in discovery, the Court in *Taylor* recognized the importance of alibi disclosure rules in protecting the State "against an eleventh-hour defense[.]" *Id*. at 412 n.17 (quoting *Williams v. Florida*, 399 U.S. 78, 81-82 (1970)). In this instance, the appellate court held that the trial record showed that Washington had intentionally attempted to gain an unfair advantage by first asserting an alibi defense after the State rested in violation of Illinois Supreme Court Rule 413(d). *People v. Haslett*, No. 1-04-0325 slip op. at 33 (Ill. App. Ct. Jun. 23, 2006). Exclusion of Haslett's testimony under such circumstances was consistent with the Supreme Court's confirmation of the State courts' power to enforce its discovery rules with appropriate sanctions. *See Taylor*, 484

U.S. at 415. We therefore find that the Illinois court's decision was neither contrary to nor an unreasonable application of clearly established federal law. Claim (b) is denied.

## CONCLUSION

Haslett's petition for a writ of habeas corpus is denied.

_____
Charles P. Kocoras
United States District Judge

Dated: __November 18, 2010__